UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MCGUIRE PV HOLDING L.P.
455 Cayuga Road, Suite 100
Buffalo, New York 14225,

CAMPUS SQUARE LLC
455 Cayuga Road, Suite 100
Buffalo, New York 14225,

RP OAK HILL BUILDING COMPANY, INC.
3556 Lakeshore Road, Suite 620
Buffalo, New York 14219,

     and

EMPIRE BUILDING DIAGNOSTICS, INC.
400 Ingham Avenue
Lackawanna, New York 14218,

       *Plaintiffs*,

     vs.

SONWIL DISTRIBUTION CENTER, INC.
2732 Transit Road
West Seneca, New York 14224,

315 SHIP CANAL PARKWAY, LLC
315 Ship Canal Parkway
Buffalo, New York 14218,

PROLINE CONCRETE OF WNY, INC.
3090 Shirley Road, P.O. Box 396
North Collins, New York 14111,

     and

SITE SPECIALTIES, LLC
12658 Big Tree Road
East Aurora, New York 14052,

       *Defendants*.

_____

**COMPLAINT**

**Civil No. 1:23-cv-1277**

**TRIAL BY JURY DEMANDED**

Plaintiffs, McGuire PV Holding L.P., Campus Square LLC, RP Oak Hill Building Company, Inc., and Empire Building Diagnostics, Inc., by and through their attorneys, PILLINGER MILLER TARALLO, LLC, do hereby allege the following, upon information and belief:

1.      This is a civil action for recovery of costs under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a). Plaintiffs seek to recover the un-reimbursed response costs they have incurred, as well as a declaratory judgment of liability for future response costs, in connection with the release of hazardous substances into the environment at, on, and from the Pilgrim Village Project located at 903 Ellicott Street and 1100 Michigan Avenue, Buffalo, New York, 14209 ("Project"). Plaintiffs also seek, in the alternative, Defendants be found liable for one hundred percent (100%) contribution of these costs to Plaintiffs pursuant to CERCLA, 42 U.S.C. §9613(f)(1). Plaintiffs also seek relief under common law causes of action in negligence, private nuisance, trespass, prima facie tort, indemnity, contribution, and for declaratory relief. Plaintiffs seeks damage for all costs incurred in responding to the contamination located at and on the Project and consequential damages, attorneys' fees and costs of suit, and for such further and other relief as this Court may deem appropriate.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action, and the Defendants, pursuant to 28 U.S.C. § 1331, and Sections 107 and 113 of CERCLA,

42 U.S.C. §§ 9607 and 9613, without regard to the amount in controversy or the citizenship of the parties.

3.     Venue is proper in this District under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because these claims arise, and because this dispute involves response actions undertaken to remediate releases or threatened releases of hazardous substances at real property located in the City of Buffalo, Erie County, New York.

4.     This Court has jurisdiction of the state law claims pursuant to the doctrine of pendent jurisdiction, and pursuant to 28 U.S.C. § 1367(a).

## PARTIES

5.     Plaintiff McGuire PV Holding L.P. is a New York limited partnership with an office for the transaction of business at 455 Cayuga Road, Suite Buffalo, New York 14225.

6.     Plaintiff Campus Square LLC is a New York limited liability company with an office for the transaction of business at 455 Cayuga Road, Suite 100, Buffalo, New York 14225.

7.     Plaintiffs McGuire PV Holding L.P. and Campus Square LLC are hereinafter referred to collectively as "McGuire".

8.     Plaintiff RP Oak Hill Building Company, Inc. ("RP Oak Hill") is a domestic New York business corporation with an office for the transaction of business at 3556 Lakeshore Road, Suite 620, Buffalo, New York 14219.

3

9.    Plaintiff Empire Building Diagnostics, Inc. ("Empire") is a domestic New York business corporation with its principal place of business located at 400 Ingham Avenue, Lackawanna, New York 14218.

10.    McGuire, RP Oak Hill and Empire may be referenced herein from time to time as "Plaintiffs."

11.    Defendant Sonwil Distribution Center, Inc. ("Sonwil") is a domestic New York business corporation with an office for the transaction of business at 2732 Transit Road, West Seneca, New York 14224.

12.    Sonwil is a "person" within the meaning of Section 101 of CERCLA, 42 U.S.C. § 9601(21) because it is a firm, corporation, association, partnership, consortium, joint venture, or other commercial entity.

13.    315 Ship Canal Parkway, LLC ("315 Ship Canal") is a domestic New York limited liability company with an office for the transaction of business at 315 Ship Canal Parkway, Buffalo, New York 14218.

14.    315 Ship Canal is a "person" within the meaning of Section 101 of CERCLA, 42 U.S.C. § 9601(21) because it is a firm, corporation, association, partnership, consortium, joint venture, or other commercial entity.

15.    Proline Concrete of WNY, Inc. ("Proline") is a domestic New York business corporation with an office for the transaction of business at 3090 Shirley Road, P.O. Box 396, North Collins, New York 14111, and principal place of business at 7341 Southwestern Boulevard, Eden, New York 14057.

16.    Proline is a "person" within the meaning of Section 101 of CERCLA, 42

4

U.S.C. § 9601(21) because it is a firm, corporation, association, partnership, consortium, joint venture, or other commercial entity.

17.     Site Specialties, LLC ("Site Specialties") is a domestic New York limited liability company with an office for the transaction of business at 12658 Big Tree Road, East Aurora, New York 14052.

18.     Site Specialties is a "person" within the meaning of Section 101 of CERCLA, 42 U.S.C. § 9601(21) because it is a firm, corporation, association, partnership, consortium, joint venture, or other commercial entity.

19.     Sonwil, 315 Ship Canal, Proline, and Site Specialties may be referenced herein from time to time, collectively, as "Defendants."

## FACTUAL BACKGROUND

20.     On or about February 2, 2015, McGuire entered into a Standard Form of Agreement Between Owner and Construction Manager as Constructor with RP Oak Hill, AIA A133-2009 ("McGuire/RP Oak Hill Agreement"), to serve as construction manager on the Project. A copy of the duly executed McGuire/RP Oak Hill Agreement is annexed hereto as **Exhibit A**.

21.     At the time the McGuire/RP Oak Hill Agreement was established, now defunct non-party Pilgrim Village Associates LP owned the property upon which the Project was to be constructed. On or about November 13, 2019, Pilgrim Village Associates LP transferred ownership of the site of the Project to McGuire Development Company LLC following a real property foreclosure proceeding against Pilgrim Village Associates LP. McGuire Development Company LLC therein

transferred ownership of the site of the Project to McGuire PV Holding LP on November 13, 2019.

22.     On or about February 10, 2015, McGuire issued to RP Oak Hill a Limited Scope Notice to Proceed "Prior to GMP" as expressly provided pursuant to the McGuire/RP Oak Hill Agreement. A copy of this Limited Scope Notice to Proceed is annexed hereto as **Exhibit B**.

23.     Under that Limited Scope Notice to Proceed and in its role as construction manager, RP Oak Hill retained Empire as a subcontractor to the Project for the purpose of providing demolition and asbestos abatement services.

24.     Thereafter, RP Oak Hill issued a Work Order, dated February 13, 2015, to Empire. Attachment A to this Work Order is a Scope of Work document, also dated February 13, 2015. The Work Order and Scope of Work Document are annexed hereto as **Exhibit C**. Pursuant to this Scope of Work, Empire was to perform the following tasks, among others:

- Demolition:
    - Asbestos Abatement & Selective Demolition Work Contractor shall provide all demolition work per below:
        - Buildings 1, 2, 3, 4, & 6 are to be completely removed and legally disposed with the exception of the basement walls. The basement floor is to be fractured and left in place and the existing basements are to be filled completely to the top of the existing foundation walls with # 3 & 4 stone. Include any items within the basement as demolition; this may include furnaces, steel columns, vents, piping, etc.
        - All utilities are to be cut and capped to include gas, electric, telephone, cable, storm sewer and sanitary sewer.
        - All required City of Buffalo Permits are to be obtained and paid by this contractor, including any required bonds.

6

▪ No demolition materials will be left in the basement area; prior to backfill operations this contractor will have the basements inspected and signed off ready for backfill by RPOHD personnel.

*See*, **Exhibit C**, at page 4.

25.     Due to circumstance beyond the control of the Plaintiffs, work on the Project was shut down on a temporary basis in late 2015. Before the Project was shut down, Empire completely demolished and removed the five (5) existing buildings in accordance with their Work Order. Per the Work Order, the existing basements of these structures were left in place for removal in future phases of the project.

26.     As part of the Work Order, Empire was required to fill the basements to eliminate to eliminate the fall hazard that would be created by leaving the basements open until the full project proceeded.

27.     In November 2015, Empire engaged Proline to provide the necessary backfill material for the foundations at the Project.

28.     Empire informed Proline that the backfill material, per RP Oak Hill's request, would be used as temporary fill in the empty basements of the five buildings that had been demolished by Empire at the Project.

29.     As part of the Empire/Proline agreement, Proline was obligated to provide suitable backfill material that met both commercially reasonable quality standards and those standards applicable under relevant regulatory guidance. This is consistent with the standards generally applicable to projects such as the backfill project at the Project.

30.     In late November 2015, Proline provided Empire with backfill material and the foundation holes were filled for safety reasons during the suspension of the Project. Upon information and belief, Proline sourced the material through Site Specialties, a broker of materials that can and is used as backfill. Site Specialties obtained the backfill material from Sonwil and/or 315 Ship Canal. *See*, **Exhibit D**, annexed hereto.

31.     In early 2019, the Project was renewed, and McGuire engaged C&S Companies ("C&S") to monitor the Project in accordance with New York State's Department of Environmental Conservation ("NYSDEC") Brownfield Clean-Up Program.

32.     In December 2019, pursuant to their monitoring effort and at the NYSDEC's request, C&S installed test wells at the Project and observing that the backfill appeared to be made primarily of "slag[1]", recommended that the backfill material brokered, sold, provided, produced, transported, delivered, or supplied by Proline, Site Specialties, Sonwil, and/or 315 Ship Canal be tested.

33.     The tests confirmed that the backfill material brokered, sold, provided, produced, transported, delivered, or supplied by Defendants contained technologically enhanced naturally occurring radioactive material ("TENORM[2]"),

---

[1] Slag is a waste product of smelting or refining of metal ores to create the final molten metal.

[2] Technologically Enhanced Naturally Occurring Radioactive Material ("TENORM") is defined as, "Naturally occurring radioactive materials that have been concentrated or exposed to the accessible environment as a result of human activities such as manufacturing, mineral extraction or water processing." https://www.epa.gov/radiation/technologically-enhanced-naturally-occurring-radioactive-materials-

which was used to backfill the empty and unguarded foundation holes openings at the Project. Because of its radiological content, this material was not suitable for use at the Project.

34.     Proline, Site Specialties, Sonwil and/or 315 Ship Canal never disclosed to Plaintiffs that the backfill material it provided contained TENORM.

35.     Proline and/or Site Specialties acquired the backfill material used to fill the empty and unguarded basement foundations from a site owned and operated by Defendants Sonwil and/or 315 Ship Canal.

36.     On October 22, 2010, the New York State Department of Environmental Conservation issued a "Beneficial Use Determination" ("BUD") permitting slag from Sonwil's facility at 315 Ship Canal Parkway to be used for asphalt aggregate, railroad ballast, road and park lot base, anti-skid material and Portland cement base. *See*, **Exhibit E**, annexed hereto. This Beneficial Use Determination does not permit the use of Sonwil and/or 315 Ship Canal's slag to be used as backfill material.

37.     As a result of the discovery that the backfill material contained TENORM, Plaintiffs were required to notify the NYSDEC. Thereafter, Plaintiffs retained Austin Master Services, LLC ("AMS") to draft and execute a plan for removal and disposal of the backfill material, subject to approval by the NYSDEC. This plan was approved by the NYSDEC and work commenced on October 18, 2022.

---

tenorm#:~:text=Technologically%20Enhanced%20Naturally%20Occurring%20Radioactive%20 Material%20(TENORM)%20is%20defined%20as,extraction%2C%20or%20water%20processin g.%E2%80%9D

38.    On or about May 10, 2023, AMS completed its work, and the NYSDEC provided final approval of the Project.

39.    As a result thereof, Plaintiffs were caused to incur the costs of removing and disposing of the TENORM containing backfill material.

40.    As a result of Defendants' actions and/or omissions, Plaintiffs have suffered, are suffering, and will suffer substantial damages and injury with regard to loss of value of its property and other compensatory property damages.

41.    Plaintiffs have paid significant response costs in assessing the release or threatened release of a hazardous substance within the meaning of CERCLA, 42 U.S.C. §9607(a).

42.    Plaintiffs are not responsible for, nor did they cause nor contribute to the presence and/or release of hazardous substances at the Project.

43.    Plaintiffs have incurred actual damages and potential future damages as a direct result of Defendants' actions and/or omissions.

44.    The presence of the backfill material, slag and TENORM supplied by Defendants has interfered with Plaintiffs' use and enjoyment of the Property and have diminished its value.

## STATUTORY FRAMEWORK

45.    Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) permits any person to seek compensation from a Potentially Responsible Party to recover costs associated with remediating environmental contamination. Section 107(a) provides, in relevant part that:

… .

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –

… ;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned.

The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26. For purposes of applying such amendments to interest under this subsection, the term "comparable maturity" shall be determined with reference to the date on which interest accruing under this subsection commences.

42 U.S.C. § 9607(a).

46.     Plaintiffs satisfy all the criteria above.

47.     Plaintiffs are an "owner or operator" of a facility where a hazardous substance was discharged. 42 U.S.C. § 9601(20)(A).

48.     The TENORM-impacted slag Plaintiffs were compelled to remove are considered a "hazardous substance" under CERCLA. CERCLA defines a "hazardous substance" as:

(A) any substance designated pursuant to section 311(b)(2)(A) of the Federal Water Pollution Control Act, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act (but not including any waste the regulation of which under the Solid Waste Disposal Act has been suspended by Act of Congress), (D) any toxic pollutant listed under section 307(a) of the Federal Water Pollution Control Act, (E) any hazardous air pollutant listed

12

under section 112 of the Clean Air Act, and (F) any imminently hazardous

chemical substance or mixture with respect to which the Administrator has

taken action pursuant to section 7 of the Toxic Substances Control Act.

42 U.S.C. § 9601(14).

49.     CERCLA designates substances under its domain by referencing

substances regulated under other federal environmental statutes and what the

Environmental Protection Agency ("EPA") has designated as hazardous under its

regulatory rules. 42 U.S.C. § 9602.

50.     According to the EPA, TENORM is defined as "naturally occurring

radioactive materials that have been concentrated or exposed to the accessible

environment as a result of human activities such as manufacturing, mineral

extraction, or water processing." **See**, United States Environmental Protection

Agency (EPA) Technologically Enhanced Naturally occurring Radioactive Materials

(TENORM), www.epa.gov, https://www.epa.gov/radiation/technologically-enhanced-

naturally-occurring-radioactive-materials-tenorm (last visited October 14, 2021).

51.     "Technologically enhanced" means that the radiological, physical, and

chemical properties of the radioactive material have been concentrated or further

altered by being processed, beneficiated, or disturbed in a way that increases the

potential for human and/or environmental exposures. Id. Naturally Occurring

Radioactive Material ("NORM") is defined as "materials which may contain any of

the primordial radionuclides or radioactive elements as they occur in nature, such as

radium, uranium, thorium, potassium, and their radioactive decay products, such as radium and radon, that are undisturbed as a result of human activities. Id.

52. CERCLA applies to the compound radium, which can be found in TENORM. See generally, Long Island Pure Water LTD., v. Cuomo, 375 F.Supp.3d 209 (E.D.N.Y. 2019); see also, 40 C.F.R. Chapter 1.

53. CERCLA applies to "residual radioactive materials" as a "waste in the form of tailings resulting from the processing of ores for the extraction of uranium and other valuable constituents of the ores." 40 C.F.R. 192.01(a)(1). Tailings are defined as "the remaining portion of a metal-bearing ore after some or all of such metal, such as uranium has been extracted." 40 CFR 192.01(m). Upon information and belief, slag is a tailing from the steel production process.

54. CERCLA applies to "radionuclides. 40 C.F.R. § 302.4.

55. By abandoning and/or permitting the illegal disposal of the TENORM-impacted fill upon the Site, the property became a "facility" under CERCLA.

56. CERCLA Section 101(9) defines "facility" to include any "pit, pond, lagoon, impoundment, ditch, landfill, [or] storage container," or any "site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . . ." 42 U.S.C. § 9601(9).

57. As a result of the need to remove the TENORM-impacted slag, Plaintiffs have incurred a response cost to remove the slag from the Site and eliminate the threat of further impacts to the environment or the public.

58.     CERCLA Section 101(25) defines "respond" or "response" as "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25).

59.     CERCLA Section 101(23) defines "remove" or "removal" as "the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release." 42 U.S.C. § 9601(23).

60.     CERCLA Section 101(24) defines "remedy" or "remedial action" to include "those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. . . ." 42 U.S.C. § 9601(24).

61.     Pursuant to CERCLA's statutory and regulatory provisions, TENORM is a hazardous substance under CERCLA. As such, the temporary backfill material brokered, sold, provided, produced, transported, delivered, or otherwise supplied by

Proline, Site Specialties, Sonwil and/or 315 Ship Canal which contained TENORM was a hazardous substance under CERCLA.

62.     As a result of the foregoing investigation and remedial efforts, and its ongoing efforts, Plaintiffs have incurred expenses and costs consistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 30 *et seq.*, to fully remediate the Project for which Defendants bear full responsibility.

## FIRST CAUSE OF ACTION
### Strict Liability pursuant to CERCLA 42 U.S.C. § 9607(a)(2)

63.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 62 as if fully set forth herein.

64.     This is an action to recover response costs under 42 U.S.C. § 9607.

65.     Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607 (a), any person who has incurred necessary costs of response consistent with the NCP is entitled to recover those costs from any other person who is liable or potentially liable under CERCLA § 107(a), 42 U.S.C. § 9607(a).

66.     Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607 (a)(2), any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed is strictly liable for all costs of removal or remedial actions that are incurred by any other person at the facility.

67.     Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607 (a)(3), any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or

incineration vessel owned or operated by another party or entity and containing such hazardous substances is strictly liable for all costs of removal or remedial actions that are incurred by any other person at the facility.

68.    TENORM is considered a "hazardous substance" under 42 U.S.C. §9602.

69.    Proline, Site Specialties, Sonwil, and/or 315 Ship Canal are "persons" as defined by CERCLA, 42 U.S.C. § 9601(21).

70.    The Pilgrim Village Project located at 903 Ellicott Street and 1100 Michigan Avenue, Buffalo, New York, 14209 is a "facility" as defined by CERCLA, 42 U.S.C. § 9601(9).

71.    As a result of Defendants sale and/or transport of TENORM-impacted slag to the Site, there have been "releases" and/or "threatened releases" of "hazardous substances" as a result of the brokerage, sale, provision, production, transportation, delivery or otherwise supply of hazardous substances at or from Pilgrim Village Project located at 903 Ellicott Street and 1100 Michigan Avenue, Buffalo, New York, 14209 with the meaning of CERCLA §101(22), 42 U.S.C. § 9601(22).

72.    The actions undertaken by Plaintiffs with respect to the remediation of Pilgrim Village Project located at 903 Ellicott Street and 1100 Michigan Avenue, Buffalo, New York, 14209 constitute "response actions" as that term is defined in CERCLA §101(25), 42 U.S.C. § 9601(25).

73.    The costs of response actions undertaken by Plaintiffs with respect to the remediation of the Project constitute "costs of response" as that term is defined in CERCLA §101(a), 42 U.S.C. § 9601(a).

74.     All of the costs of response incurred by Plaintiffs with respect to the remediation of the Project were necessary and consistent with the NCP.

75.     Proline, Site Specialties, Sonwil and/or 315 Ship Canal are persons that brokered, sold, provided, produced, transported, delivered, or otherwise supplied hazardous substances to the Project from which there has been a release or a threatened release that has caused the incurrence of response costs by Plaintiffs.

76.     Pursuant to CERCLA, 42 U.S.C. § 9607(a)(2) and (3), Defendants are strictly liable for the costs and damages alleged.

## SECOND CAUSE OF ACTION
### Contribution pursuant to CERCLA 42 U.S.C. § 9613(f)

77.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 76 as if fully set forth herein.

78.     As a direct and proximate result of Defendants' brokerage, sale, provision, production, transportation, delivery or otherwise supply of hazardous substances to or at the Project, Plaintiffs have incurred and may incur response costs in the future within the meaning of CERCLA, 42 U.S.C. § 9607(a).

79.     Plaintiffs have incurred further costs for the removal and remediation of hazardous substances brokered, sold, provided, produced, transported, delivered, or supplied to the Project in order to complete the response to the NCP.

80.     All of the costs that Plaintiffs have incurred or will incur, including attorneys' fees expended in this action, are and will be a necessary cost of response consistent with the NCP within the meaning of CERCLA, 42 U.S.C. § 9607(a).

81.     Pursuant to CERCLA, 42 U.S.C. §9613(f), Defendants are obligated to pay to Plaintiffs their contributive share of the foregoing cost and damages.

### THIRD CAUSE OF ACTION
### Common Law Negligence

82.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 81 as if fully set forth herein.

83.     As the brokers, sellers, providers, producers, transporters, deliverers, and/or suppliers of the temporary backfill material, respectively, Proline, Site Specialties, Sonwil, and 315 Ship Canal each owed a duty of care to Plaintiffs to provide a commercially reasonable and suitable backfill material in accordance within applicable federal and New York regulations.

84.     Defendants owed to Plaintiffs a duty to exercise reasonable care to prevent the spill, release, escape, discharge, disposal, brokerage, sale, provision, production, transportation, delivery or otherwise supply of temporary backfill material which was a hazardous substance and/or migration of hazardous substances onto and into the soils and environs at the Project, and breached their duties by failing to exercise reasonable care to prevent and/or properly contain the spill, release, escape, discharge, disposal, brokerage, sale, provision, production, transportation, delivery or otherwise supply and/or migration of such hazardous substances and other contaminants.

85.     By brokering, selling, providing, producing, transporting, delivering or otherwise supplying the hazardous substance to the Project, Proline, Site Specialties,

Sonwil, and/or 315 Ship Canal acted negligently – in breach of their duty of care - to Plaintiffs.

86.    Defendants negligently, carelessly and recklessly discharged hazardous substances, and other contaminants into the environment.

87.    Defendants' negligent acts and omissions have resulted in the contamination of the Project and proximately caused Plaintiffs to incur expenditures arising from the remedial activities associated with remediation of the Project.

88.    Defendants are liable to Plaintiffs in negligence for all direct and indirect damages including, but not limited to, loss of use of enjoyment, reduced property values, stigma damages, property damages, carrying costs, and other costs and fees, including attorneys' fees, and past and future injury, harm and property damage suffered by Plaintiffs, some of which is irreparable.

89.    Plaintiffs' negligence cause of action is timely pursuant to the doctrine of relation back. New York Civil Practice Law & Rules, § 203(f).

### FOURTH CAUSE OF ACTION
### Trespass

90.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 89 as if fully set forth herein.

91.    McGuire PV Holding LP is the successor in interest to the premises heretofore designated as the "Project," and pursuant to CERCLA § 107(a), 42 U.S.C. § 9607 (a), is a person who has incurred necessary costs of response consistent with the NCP entitled to recover those costs from any other person who is liable or potentially liable under CERCLA § 107(a), 42 U.S.C. § 9607(a).

92.     Defendants intentionally, recklessly, negligently, and unlawfully brokered, sold, provided, produced, transported, delivered or otherwise supplied the hazardous substance to the Project.

93.     Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the Project was unlawful, without justification, and without authorization, permission or consent of Plaintiffs.

94.     Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the Project interfered with Plaintiffs' use and enjoyment of the Property and have diminished its value.

95.     Defendants' trespass has resulted in the contamination of the Project and proximately caused Plaintiffs to incur expenditures arising from the remedial activities associated with remediation of the Project.

96.     Defendants are liable to Plaintiffs in trespass for all direct and indirect damages including, but not limited to, loss of use of enjoyment, reduced property values, stigma damages, property damages, carrying costs, and other costs and fees, including attorneys' fees, and past and future injury, harm and property damage suffered by Plaintiffs, some of which is irreparable.

## FIFTH CAUSE OF ACTION
### Private Nuisance

97.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 96 as if fully set forth herein.

98.    McGuire PV Holding LP is the successor in interest to the premises heretofore designated as the "Project," and pursuant to CERCLA § 107(a), 42 U.S.C. § 9607 (a), is a person who has incurred necessary costs of response consistent with the NCP entitled to recover those costs from any other person who is liable or potentially liable under CERCLA § 107(a), 42 U.S.C. § 9607(a).

99.    Defendants intentionally, recklessly, negligently, and unlawfully brokered, sold, provided, produced, transported, delivered or otherwise supplied the hazardous substance to the Project.

100.    Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the Project was unlawful, without justification, and without authorization, permission or consent of Plaintiffs.

101.    Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the Project was unreasonable.

102.    Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the Project was a substantial interference with Plaintiffs' use and enjoyment of the Property and have diminished its value.

103.    Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the

Project interfered with Plaintiffs' use and enjoyment of the Property and have diminished its value, and as a result were a nuisance.

104.    Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the Project were substantial.

105.    Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the Project caused damage to land, buildings or vegetation at the Project; were an annoyance, inconvenience and source of discomfort; and remain a threat of future substantial damages.

106.    Defendants' acts and/or omissions have resulted in the contamination of the Project and proximately caused Plaintiffs to incur expenditures arising from the remedial activities associated with remediation of the Project.

107.    Defendants are liable to Plaintiffs in private nuisance for all direct and indirect damages including, but not limited to, loss of use of enjoyment, reduced property values, stigma damages, property damages, carrying costs, and other costs and fees, including attorneys' fees, and past and future injury, harm and property damage suffered by Plaintiffs, some of which is irreparable.

**SIXTH CAUSE OF ACTION**
**Prima Facie Tort**

108.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 107 as if fully set forth herein.

109.    Defendants intentionally, recklessly, negligently, and unlawfully brokered, sold, provided, produced, transported, delivered or otherwise supplied the hazardous substance to the Project.

110.    Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the Project was unlawful, without justification, and without authorization, permission or consent of Plaintiffs.

111.    Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the Project was unreasonable.

112.    Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the Project was a substantial interference with Plaintiffs' use and enjoyment of the Property and have diminished its value.

113.    Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the Project interfered with Plaintiffs' use and enjoyment of the Property and have diminished its value, and caused a financial loss to Plaintiffs.

114.    Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the Project were substantial.

115.    Defendants' intentional, reckless, negligent brokerage, sale, provision, production, transportation, delivery and/or supply of the hazardous substance to the Project caused damage to land, buildings or vegetation at the Project; were an annoyance, inconvenience and source of discomfort; and remain a threat of future substantial damages.

116.    Defendants' acts and/or omissions have resulted in the contamination of the Project and proximately caused Plaintiffs to incur expenditures arising from the remedial activities associated with remediation of the Project.

117.    Defendants are liable to Plaintiffs in prima facie tort for all direct and indirect damages including, but not limited to, loss of use of enjoyment, reduced property values, stigma damages, property damages, carrying costs, and other costs and fees, including attorneys' fees, and past and future injury, harm and property damage suffered by Plaintiffs, some of which is irreparable.

## SEVENTH CAUSE OF ACTION
### Indemnification

118.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 117 as if fully set forth herein.

119.    Plaintiffs, through no fault of their own, have and will be lawfully compelled to pay damages and/or to incur substantial expenses in the form of damages related to the remediation of the Project.

120.    The remediation is necessary to clean up the contamination caused by Defendants' spill, release, escape, discharge, disposal, brokerage, sale, provision, production, transportation, delivery or otherwise supply of the backfill material.

121.   Defendants are therefore required to indemnify Plaintiffs for all past and future expenses, fees, damages and response costs suffered as a result of their acts and/or omissions.

## EIGHTH CAUSE OF ACTION
## Common Law Contribution

122.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 121 as if fully set forth herein.

123.   Plaintiffs have incurred and will continue to incur substantial expenses and damages to remediate the contamination at the Project caused by Defendants' spill, release, escape, discharge, disposal, brokerage, sale, provision, production, transportation, delivery or otherwise supply of the backfill material.

124.   Plaintiffs are entitled to contribution from Defendants for all past and future expenses, fees, damages and responses and other costs incurred by Plaintiffs for the remediation of the Project.

## NINTH CAUSE OF ACTION
## Declaratory Relief

125.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 124 as if fully set forth herein.

126.   An actionable, substantial, legal controversy now exists between Plaintiffs and Defendants, and Plaintiffs seek a judicial declaration of its rights and legal relations with Defendants pursuant to 28 U.S.C. §2201. Plaintiffs contend that Defendants are strictly liable under CERCLA and are obligated to reimburse

Plaintiffs for their contributory share of its past, current and future costs of responsive damages under CERCLA, 42 U.S.C. §§9607(a) and 9613(f).

127.   A declaratory judgment is appropriate for numerous reasons, including, but not limited to, the following:

    a.   A declaratory judgment will alleviate the need for multiple lawsuits as Plaintiffs have incurred costs in making a response in the past, and will incur costs in making a response in the future, thereby providing a complete solution to the differences between the parties;

    b.   A declaratory judgment will provide assurances that Plaintiffs will be reimbursed for past, present and future costs so that they will be able to make the proper response; and

    c.   The public interest will be served and the declaratory judgment will define the rights and responsibilities of the parties in this suit and, in so doing, will render Plaintiffs more able to make the proper environmental response and further CERCLA's statutory goal to "protect the public health, welfare and environment."

128.   Plaintiffs are entitled to, and request, a trial by jury on all causes of action.

WHEREFORE, Plaintiffs respectfully request this Court award judgment jointly and severally, in favor of Plaintiffs and against Defendants as follows:

    a.   Awarding judgment to Plaintiffs against Defendants, in amount of the total past, present and any future cleanup and remedial costs and all direct

and indirect damages, incurred by Plaintiffs in responding to the contamination referenced herein;

b. Awarding judgment to Plaintiffs against the Defendants, the sum of one million six hundred thousand dollars ($1.6 million) in compensatory and consequential damages;

c. Awarding judgment to Plaintiffs against Defendants, an amount equal to the diminution in the value of the Project, including but not limited loss of opportunity;

d. Awarding judgment to Plaintiffs against Defendants requiring reimbursement for the attorneys' fees, interest, costs and disbursements incurred in bringing this action;

e. Awarding judgment for Plaintiffs for prejudgment interest, penalties and punitive damages; and

e. For such other and further general and equitable relief as the Court deems just and proper.

Dated:       December 8, 2023
             Buffalo, New York

                         **PILLINGER MILLER TARALLO, LLP**

             By:

                         Kenneth A. Krajewski, Esq.
                         Counsel for Plaintiffs
                         MCGUIRE PV HOLDING L.P.,
                         CAMPUS SQUARE LLC,
                         RP OAK HILL BUILDING COMPANY,
                         INC., and EMPIRE BUILDING
                         DIAGNOSTICS, INC.